Inc. and Raven J. Lucia Petitioners v. Securities and Exchange Commission. Mr. Perry for the Petitioners, Mr. Frieda for Respondent SEC, and Mr. Stern for Respondent DOJ. Good morning. Good morning, Your Honors. May it please the Court. Mark Perry for the Petitioners. The United States is one who exercises significant authority under the laws of the United States. The Supreme Court has also told us that that includes every judge, appellate judges and trial judges, and quasi-judicial officers, including commissioners and clerks. In fact, in the history of the Republic, the Supreme Court has never found that an adjudicative officer is not an officer of the United States. If that were the only case law we had, this the ALJs of the SEC, including ALJ Elliott, who issued the decision in this case, are officers of the United States. Faced with that reality, faced with the Supreme Court's clear and unequivocal declaration, including in Freytag and in Edmund, regarding judges whose decisions could not be finaled unless approved by some other officer, the SEC tries to fit itself within this Court's decision in Landrie, a narrow exception, in fact, the only appellate case in the history of the Republic to ever hold a judge who oversaw trial-level proceedings not to be an officer of the United States. Are you contending that Landrie was wrongly decided? Your Honor, we do think that Landrie was wrongly decided, but we are taking Landrie at its word for purposes of this panel, and I will explain that in two steps. Landrie misread Freytag, as Judge Randolph pointed out in his concurrence, and if this Court, this panel, respectfully, were to agree with the SEC here, we would take up the correctness of Landrie's EMX Court by the Supreme Court. However, Landrie is a very limited case. In fact, the government, when the Landrie case itself went to the Supreme Court, the United States government, the Solicitor General told the Supreme Court, Landrie is not a categorical rule, Landrie does not apply to ALJs of any other agency, Landrie applies only to the FDIC. And the importance of that for this case is that we are operating under a significantly different statutory structure. The key determinant in Landrie, and this is a quote, Your Honor, from page 1133 of 204F3rd, was that the ALJs of the FDIC, quote, can never render the decision of the FDIC. Can never render the decision of the FDIC. Congress made a different determination in the Securities Exchange Act, the organic statute for the SEC. In that statute, and the citation is 15 U.S.C., 78D-1C, Congress said very clearly that SEC ALJs can render the final decision of the SEC. Here's the quote. So, in your view, Congress having made that decision, whatever authority the commission may have with regard to its internal working, could never change that fact? Yes, Your Honor. The Congress having established the office of ALJ and imbuing it with the agency cannot take away that status, that constitutional competence, either by regulation or practice, because Congress is the one given the power in Article II to establish inferior offices. So, just hypothetically, if the commission decided that it was going to review every case of an ALJ, every initial decision, and determine whether or not it would grant review, and this was a substantive review. Yes, Your Honor. And then the commission issued an order saying we have determined after substantive review not to make any change or adjustment in the initial decision, and therefore the initial decision comes final upon the issuance of our order. Would your position be that to the extent the commission was trying to, I don't know, tweak the statutory language, that still would not change the nature of the finality and the significant authority exercise for purposes of the appointment clause? It would not change the office or the officer's status as officers for this reason. Congress in the statute specifically specified, 78D1B, specifically specified that the SEC has discretionary review over ALJ decisions. If the SEC elects, as it did in your hypothetical, Judge Rogers, but not in the real world, I want to make clear, this is only a hypothetical. If the SEC elects to review every case, the statute still authorizes only discretionary review except in the limited category of cases. Right. Just like in FRATE, and therefore the constitutional competence of the officer must be established by reference to the statutory scheme, not the SEC's practice. That's the importance of Congress establishing offices. And here Congress went one step further. It adopted in the Exchange Act a distinction that was then later reflected in the APA, Section 556 and 557, between initial decisions and recommended decisions. The FDIC and Landry could only issue, the ALJs could only issue recommended decisions. Right. Every single recommended decision must by law under the APA be reviewed by the agency so that your hypothetical was in fact statutory in the FDIC context. In the SEC context, Congress specified following the initial decision route. And the importance of the initial decision is the APA and the Attorney General's Manual both make clear. An initial decision becomes the decision of the agency by operation of law. No agency action is required. And again. But it becomes the decision of the commission. Right. And I guess my question is, you were pointing first to 78D1 saying that the ALJ can render the decision. But the ALJ can't. The only way the ALJ's decision becomes authoritative is if it is deemed the action of the commission. And we all know those members were duly appointed. Your Honor, that's not what 78D1C says. 78D1C says the ALJ's... Deemed the action of the commission. Action of the commission. Yes. Shall be deemed the action of the commission. Whereas a recommended decision in the FDIC regime, that decision is never the action of the commission. The commission has to adopt another decision. So, for example, where the SEC does not grant review. There's no condition of review when the SEC doesn't take a response to review. Which is 90% of cases. Okay. 90% of the SEC's cases. The SEC does not adopt as its own the ALJ's initial decision. It states that the ALJ's decision itself is final. The ALJ's decision is the decision of the agency. You can see that very clearly in the Horizon WIMBA decision. We cite at page 30 of our brief. Where the agency says, in so many words. And this is in every finality order, by the way. This is just one that we happen to pull up. The initial decision of the administrative law judge has become the final decision of the commission. So, to go back to the magic words of Landry. The ALJ has rendered the decision of the commission in a way that the FDIC ALJs never could. Because that's the basic distinction between a recommended decision and an initial decision. Go ahead. Isn't that kind of semantic? So, I mean, if I tell my son, you know, what do you think about, you know, whether we should, you know, go here or there for vacation. And he says, I want to go to the next place. And I say, well, that's my decision, too. Have I let him make the decision? Well, your honor, in your hypothetical, I think you have reviewed his decision. Which the SEC does do in 10% of the cases. But in the case where you don't review that decision. You simply, there's no request for your review and you don't take it on your own. Your son's decision does become the family's decision. And that's one of the distinctions. But, you know, if I review that, if all I say is issue my order, that's also my decision. But that's not what the order says, your honor. The order does not say that this is my decision. It says that the ALJ's decision has become the commission's decision. Because the commission has, quote, not chosen to review. So, if I say to my son, your decision has become the family's decision. Then it's not really, it's, I've let him make the decision. I agree with that, your honor. I agree with that. Your decision is the family's decision. That's what we're trying to clarify in this language and what Congress had in mind, exactly. That, is it the free-floating opportunity to review what is critical here? Or is it the fact that the commission is imbued with that free-floating authority? It may not exercise it, except occasionally. But it always has that power. And so, when it decides not to, in my non-substantive review example. It's still taking an action saying, this is the action of the commission. And in that respect, your honor, it is exactly the same as Edmund. Which was the intermediate court of appellate review. Which had a higher court that had a certiorari-like discretionary review. And the Supreme Court held, and the government admitted in that case. That most of the appellate court's decisions were final. Happens to this court, too, by the way. But some get reviewed. That did not deprive those other decisions of finality. The fact that some higher agency may, in a small percentage of cases. Elect for the review. And the Supreme Court said that was the division in Edmund. Between a principal officer and an inferior officer. That is the ability of the higher court to review the intermediate court. Made it an inferior officer, not a principal officer. And now the government is turning that entirely on its head. And saying, the ability of the SEC to review. And by the way, the sui sponte reviews that it puts all its stock in. It has granted two or three times in the last several years. It's never done one in 2015, for example. This is not exactly an everyday event. It's saying that that makes these judges employees. Well, that can't be right with Edmund. And that's not what the Supreme Court said in Landry. And again, excuse me, this court said in Landry. And the government made exactly that point in its brief in opposition to the Supreme Court. Footnote 4. I would commend to this court that the brief in opposition in Landry. And the key, page 12, footnote 4. The government discusses Edmund in precisely the way I just did. And said that that was an inferior officer. In this case, they say, well, the question of employees wasn't an issue in Edmund. Well, that's true because the government conceded it. Which only raises the question, why won't the government concede it here? What is it about this situation? Well, we'll have to ask them about what they think the breadth of the decision is. But, I mean, the Supreme Court in Fair Enterprise said to the side, the majority opinion, you know, we're not talking here about ALJs. It's a big body of personnel and a tough issue. What do you make of the fact that the commission has to issue an order that a decision has become final? And they do that in every case. That's the thing that makes the ALJ decision authoritative is that the commission issues an order. First, Your Honor, that is what the commission does by its regulation. It's not required by the statute. The statute says the ALJ's order is deemed the order of the commission. So the ALJ has imposed a regulation. Second, I have three answers, of course. Second, that happens in every case after 42 days. There's 21 days to petition for review and 21 days for sua sponte. If after 42 days have passed, neither of those things has happened, then what the regulation says is the commission will issue a finality order. And not may. Will. There's no discretion there. In fact, a petitioner could come and get a writ of bandanas to get the direction of one. So, and third. But that, I mean, in a way that cuts the other way because it's the commission's understanding that under the statute, the commission is the final actor and that the ALJ decision has to become the decision of the commission and that, therefore, one way or another, they have to take action to embrace it. Your Honor, they don't. And let me point you back to this key language in Horizon. This is two and a half. Okay. This is two and a half. Let's look at what the commission actually does. The commission says, quote, the commission has not chosen to review the decision. Where are you? In the Horizon window finality order. But this is in every single finality order. This is the stock language of finality orders. The commission has not chosen to review. Note what the commission doesn't say. It doesn't say the commission has chosen not to review. It has made no decision. It has said it has not chosen to review. In other words, the time has gone by. And words are important. Third, my third point, the finality order, as you will see from the regulation and the orders themselves, only determines when the decision is final, not whether it is final. It becomes final by operation of law. That's 78D1C. The commission has no authority to change that by regulation. What the regulation says is when the sanctions become effective in particular. And it says that in the regulation. And it says that in the finality order. The OLC, Judge Filler, considered that precise point in respect to the Secretary of Education. This 1991 opinion, which we cite and the Justice Department doesn't address. And what the OLC said is, that just puts a time on finality for purposes of review under the APA, among other things. And that is an administrative convenience that has nothing to do with the exercise of significant authority under the laws of the United States. And the OLC opined in that case that the Secretary of Education's ALJs, operating under a scheme literally identical to this one, unlike the FDIC's, were inferior officers subject to the Appointments Clause. Can I ask you a question? Has there ever been an instance where an ALJ issues an order, the commission, for whatever reason, neglects to issue an order confirming it, or however you want to term it. And then the commission has sought to enforce the ALJ's order against the party. We've looked, Your Honor. The answer is, I don't know. You would have loved that case, right? The database is only searchable, as far as we know, by finality order. So if there is no finality order, we, from the public side, can't get to the underlying determination. The commission might know the answer to that. We do know of cases, however, where, contrary to the commission's brief, the ALJ has issued an initial decision and the commission then denies review. There's a particular review that the commission has denied. One example is Ian Ray Bellows, for example. We don't cite it in our brief. I learned about it learning from this argument. But it's just not true that they grant review of every case, so that there are initial decisions that become final after a denial of review, and they happen exactly the same way. The finality order issues that says when it's final, not whether it's final. And the criticality of that distinction is this. To return to the APA, 556 and 557 in the Attorney General's Manual, the Attorney General's Manual, pages 82 to 83, which the government cites as authoritative, says that if the presiding officer makes an initial decision, it will become the agency's final decision. That's the definition of an initial decision. Whereas if it makes a recommended decision, which is the FDIC regime, the agency must always make a decision of its own. This is a very basic distinction in the APA, and Congress adopted the former route for the FCC. Judge Pillard, you noted the breadth of this problem. I would like to comment on that. We don't know the breadth of this problem. There's 278-odd NLJs in the federal system, not including the Social Security Administration. We don't know how many of them are unconstitutionally appointed. That information is totally opaque to the public. Why do you not count the ones in the Social Security Administration? Well, there's 1,500 of them too, and we don't know how they're appointed either. This is a clause designed to promote transparency, accountability, responsibility, and until this litigation started, the Commission itself didn't know how the ALJs were appointed. And there are pleadings in the New York cases, for example, saying that they don't know how a Chief Administrative Law Judge was appointed. There happens to be an affidavit in the Timbervest case, which we cite on page 19 of our brief, that does say how ALJ Elliott was appointed, so that mystery has been resolved here. There's a curious structural question about Administrative Law Judges as judges, and we do value transparency and accountability, but accountability for judges, not so much. And, you know, I know one of the questions I have for you is if you're right on this, then aren't we into questions about removability and the free enterprise issue? But how do we, or do we, factor in to our analysis of employee versus officer the value of independence for judicative officers or officials, I should say? Your Honor, the Commission has an independent judicial officer available in every case. It's called the District Courts of the United States. Those are truly independent officers, and this case could have been brought in Article III court. If we get to the merits, if it had been brought in Article III court, it would have been dismissed. Certainly, the science-based claims could not have survived. I mean, a district judge would not have put through this, yet my client is facing a lifetime bar because the SEC decided to bring it in its pet court, which is not independent in the same way as Article III court. Congress authorized that, but Congress required also the Commission to take responsibility for that. And this notion of independence is a very dangerous concept. There are two pieces to it. First, on the back end, if you will, Congress addressed independence of decision-making by putting in the removal restrictions in the Civil Service Act. They are not an issue in this case. They may never be, but they're certainly not an issue in this case. On the front end, however, that is the appointment, Congress required the agency to take responsibility for its agencies. The APA itself says in Section 3105, each agency shall appoint the ALJs. In fact, when the Congress was considering what to do, it considered putting the appointment in the judicial conference and rejected that because it would violate the Appointments Clause, because these were constitutional officers who had to be appointed by the head of a department, not by somebody not listed in that clause of Article II. So Congress already made that decision, Your Honor. And so the independence piece has two parts to it. This is the front end and the back end. And on the front end, the Commission, with all respect, is selling a false independence to the public, to respondents, and ultimately to this Court and the other courts of appeals when it pretends that the ALJs are somehow an independent permit. They're not, and they should not be permitted to be. They are, as Section 78D1 says, delegated agents of the Commission. They are doing jobs that the Commission itself could do, and the Commission has to own that. They are creatures of the Commission. And the Appointments Clause ensures that everybody knows that these are not independent judicial officers. Again, they could go to district court and get an independent judge if they want that. They don't want an independent judge. They want their own judge. But if they want their own judge, they have to own it. They have to say, this is our judge. And that's what the Appointments Clause does. The framers were clear on that. I mean, that's the whole purpose of this structural protection against diffusion. Well, what I think we're trying to understand here is the Appointments Clause has been around for a long time and so have a lot of challenges. And is it Dodd-Frank that just so changes the nature of what's going on that sort of brings this issue into focus as distinct from assistance to the Commission having substantial authority, but now it's gone to the point where basically they're quasi-federal district court judges. Your practical answer to your question, Judge Rogers, is for many years, certainly in the SEC context, for many years the ALJs were used to make deregistration decisions, for example. Not contested enforcement actions, but administrative determinations regarding the registration of securities. And the Commission either reviewed or didn't review those. And to this day, many ALJs, in fact, the majority of ALJ decisions in the SEC involve that kind of thing. What has changed in recent years is two things, and they're related. One is the Enforcement Division has elected to bring many more cases before the ALJs rather than in district court. One can speculate on the reasons. You know, the Commission loses a lot more cases in district court, frankly, than it does before its ALJs. The other, and this is a related point, is that Congress has expanded, in Dodd-Frank, the authority of the agency to bring certain kinds of enforcement cases in its in-house court rather than in the district court. So we see more litigation of more significance to individuals. And again, Mr. Lucia is an example. Here's an individual who is brought up on charges of intentional fraud based on three words in a 122-word slide show. I really do submit that if this case had been brought in district court, first, enforcement wouldn't have brought it in district court. Second, we would have had it dismissed. And instead, it receded to a trial and is a termination of liability and a sanction with a lifetime bar, which is absolutely outrageous, unjustified, unlawful, and ultimately unconstitutional because the SEC wanted to proceed in its in-house court. So Judge Rogers, the reason the litigation has arisen of late is because of the more draconian penalties being imposed in these in-house actions, where they should be brought in district court, even if they're authorized by Congress, I submit. But second, we've also lifted a little bit of this veil of opacity. The government has operated in great secrecy as to how these ALJs are appointed. It's not at all clear to people. If you look on the SEC's website, for example, until recently, it actually said that the ALJs were hearing officers. Of course, that's the same word that the Congress used in the Exchange Act, officers of the commission. The commission now says that doesn't have any meaning, but I suggest that it does. Congress knows what the English language is. Can I just be clear what you're talking about in terms of appointment? I mean, I thought these were civil service OPM. They're put on an OPM list, and it says the agency can select from the list. It's a hybrid, Your Honor. It's a compromise that Congress reached. Well, I understand that, but, I mean, it's not opaque. And then the agency, however it decides to organize itself, draws from the list, and those people become ALJs. Yes, Your Honor, and the opacity is which entities within the agency do the actual appointments, whereas there should be no such opacity because the appointments clause tells us that it must be the head of department. All right, follow through just so I'm clear on this. You're a civil service employee. You're on the OPM list. The commission decides it needs two new hearing assistants and it has an office of hearing officers. And so the head of that office, you know, calls up OPM, gets two names. The people come over. They're interviewed, et cetera, and they're sworn in and given a caseload. I mean, there's nothing opaque about that. It's not these people are coming in at the dead of night. It's a process. There may still be this constitutional issue, and there may be some related constitutional issues that are not even in this case. But all we're dealing with is, as I understand it from reading, you know, Supreme Court as well as our cases, we're trying to look at what these people do for the commission. And your slam dunk that I want to hear Mr. Stern talk about is Congress has already made the decision. Yes, Your Honor. And there's nothing that the agency commission can do through its regulatory scheme to change that. In brief, because Congress has invested the ALJs of the SEC in an SEC-specific provision that appears in the Exchange Act, so we don't know whether this applies to other agencies, but certainly in the Exchange Act, with significant authority under the United States and authorize them to, quote, in the words of Landry, render the final decision of the agency, then they are officers. And therefore, they're- What is the authority that's so important? I mean, the commission has-one thing that seems striking to me is that the commission has authority to do full review of anything, of any ALJ that it wants, including fact-finding. So there's a little bit of tension, actually, because on the one hand, there's some suggestion that the fact-finding is reviewed deferentially. On the other hand, if there's a fact-finding that, if I'm a commissioner, it's a fact-finding I don't like, I can just call that witness in and make it brand new. So it's not clear to me, in terms of authority, what authority these ALJs are exercising that isn't just the recommendatory authority that we see in Landry. Okay, and so that, as usual, is best colored in three steps. First, look at the statute, 78D1B, which says that the SEC's entire review, with the exception of a few categories of cases, is discretionary, so that everything the ALJ does can be final. I don't buy that. I mean, you live in the world as a partner in a law firm. You review, you have a summer intern who writes something for you, and if it's beautiful and if you think it's great, you're just like, that's gone right into the brief. But you are still the decision-maker, and the commission can have spectacular ALJs that most of the work it's happy with. It doesn't make it less the work of the commission. Your Honor, I agree with that. It is the work of the commission, which is what the ALJs are authorized to do. I agree with that point. That is why they are officers. They are doing the commission's work. So you wouldn't distinguish between your authority and that of your summer intern? I mean, the statute makes the commission authoritative, not the ALJ. In your hypothetical, I am the principal officer, and my colleagues at the table are the inferior officers. Really? Your summer interns are inferior? Anybody who gives you something that's inferior? And we have employees, paralegals and secretaries and so forth who are employees. And the government works the same way, of course, and the Constitution sets it up that way, which leads to an important point, Judge Pillard, that I actually would like to comment on. Wow, so who other than the – I mean, why stop at paralegals? Paralegals are the last say on all kinds of blue book compliance and substantive checking. In the law firm, a partner's name has to be on every document. In the agency, the commission's name has to be on final documents. But who actually prepared that document under this statutory regime is the ALJ. It's not the commission. In 90% of cases, the commission doesn't review them. It is the ALJ's decision itself that speaks for the commission. So what about FBI agents? There's a lot of people in the government that are doing important work. But you're going to say you have to be presumed to be appointed clerk. There are a lot of officers in the government. Your Honor, we are dealing here in the adjudicatory capacity. Can we go back to where I started? The Supreme Court has never said that any judge is not an officer. And the Supreme Court has said that to clerks. You're backing off a little bit. I'm actually really trying to probe the scope of your position. Yes, Your Honor. So we know the test. Significant authority in the laws of the United States. We know the standards. Emolument, duration, and so forth in the Germain case. We know the application in non-judicial capacities. Morrison v. Olson, for example, is a good one. We know that most clerks and prosecutors are officers of the United States. Absolutely. When you say clerks, I mean those are the older cases from the 19th century. Clerks have discretionary functions. It's a very different thing. They're an alias to today's magistrate judges. What about my law clerks? I think your law clerks are more like the recommendatory personnel in Landry. Why? Because nothing can go out under their name ever. Their name doesn't appear on any document, unlike an ALJ decision. They don't sign anything in their own name. They're fairly in an advisory capacity to you. And everything comes out either under your name or more likely the court's name. ALJs are different. They come out under their own name. And, again, that finality order, I really would like you to read in Horizon One or any other, it doesn't say that we are adopting this order or something else. We are saying that that order is the order of the commission. You don't have to write a decision that says, for the reason my law clerk, Sally Smith, stated, affirmed or reversed. It just doesn't happen. So there's a distinction there of authorization. That comes from the delegation provision in the statute. But those things aren't dictated by the statute, right? And so if the commission had a practice of not having the ALJs' names and having everything be under the names of commissioners. I mean, it's funny because we're sliding back and forth between formalism and substance. And I take your opening position to be, we don't have to look at the statute because there's things that they've done in the regulations, and those aren't part of the operative facts or legal facts for purposes of deciding this issue. But now you're talking about things that really do flow from the regulations. So if they turned around and said, well, let's take those ALJs' names off, you know, it might be bad policy and inconsistent with the accountability that the Appointments Clause wants to achieve, but it would solve your problem about them being more like law clerks. That's not quite correct, John, because statute also says nothing herein supersedes Section 556 and 557 of the ADA. And 556 and 557 prescribe the routes by which hearings, on-the-record hearings, must be taken by agencies. Either the agency itself can take the evidence and make the decision, or it can delegate to an ALJ one of two paths, initial decision or recommended decision. The SEC has chosen, and the only place a regulation comes into play, so I'm going to agree with you to this extent, is 17 CFR 200.30-9, by which the SEC has given a blanket delegation to its ALJs to make an initial decision in every case. No recommended decisions in the SEC. There is no such thing as a recommended decision route, which is another distinction between the SEC and the FDIC, because the FDIC was solely recommended. The SEC is solely initial. But having made that decision, which is suggested, by the way, by the Exchange Act itself, that that's what Congress expected, it opted into 556 and 557, 556 and 557 then statutorily prescribed. And let's read 557. I mean, the Commission never quotes this language once, and the government has no answer to it. When the ALJ makes an initial decision, the decision becomes the decision of the agency without further proceedings. That's a direct quote from 5 U.S.C. section 557B. Congress, again, has spoken to the finality of ALJ decisions when the initial decision route is adopted. The SEC has adopted the initial decision route and it brings with it all that baggage, respectfully, that Congress has put on it and the authority that Congress has imbued, the constitutional competence of these officers. I have perhaps overstayed my welcome. I would like to hear from you on the merits, I think. Yeah. I just wanted to ask you, I gather that other agencies or commissions are responding in various ways to solve what they think may be the problem under the Appointments Clause, so that were that way to be ultimately approved by the Supreme Court, we would not have this fee change necessarily, but rather it's the accountability that is the key factor here. The IRS brief informs us that at least one other agency, the FTC, has decided to appoint its ALJs to avoid the constitutional question. The FTC has not. Judge Berman in New York in the Duca case, in fact, order just to try and work, instructed the SEC to start appointing its own or suggested that if they did so, the litigation would become moot, and the SEC wrote a very polite letter that said, no, we're not going to do that. Can they just fix it themselves? I mean, I thought that it was, you know, under the Appointments Clause either appointment by the President with Vice and Consent of the Senate or if Congress so authorizes by a head of department. And is it your view that without further legislation, that Congress has authorized SEC to agency heads to appoint ALJs? It's our view that in none of these litigations, including in this case, has the SEC ever identified any statutory prohibition or other requirement. What's your view, though? My view is that the Exchange Act and the APA together already contemplate this as being a constitutional office and already require the full commission to appoint the ALJs. This is already in the statute. They are just in plain, blatant, violent disagreement, disobedience, disobeyance of the statute and Constitution of the United States. Sounds like a really good one. All right. Let us hear from counsel. We have two counsel here. Do you want to hear from the merits at all? Come back to that or do you want to hear it now? Are you going to come back in the second round? Yes, second round. Okay. Yeah. Thank you. Let's hear from counsel from the Department of Justice. Then we'll come back. Sorry if I caught you unaware. Thank you, Your Honor. I'm Mark Stern, Justice Department. I'm not entirely sure where to begin. Well, let's begin with the statute, all right, where Congress seems to have made a fairly plain statement. And your response in part is, well, the commission has this process of this final order. And that changes everything. That's our response in part. But I think that it's looking at the statute, 78D1, we're talking that this is the general sort of delegation provision. This is not an ALJ-specific provision. This is talking about the general authority of the commission to delegate and see what it says. And this is just a universal provision that says, if the right to exercise review is declined, the assumption is you can delegate, you can take back. This is all within your power. It doesn't say anything about anything becoming automatically the action of the commission. The commission in this case, in its opinion, explicitly says none of its decisions become final merely because of the lapse of time. And that, we think, is 100% consistent with what the statute says. Well, you say that, but, I mean, even in its regulations, it says, you know, the time passes. Oh, and untimely, sure. Yeah. But, I mean, that's true, you know, that's true across the board. Yeah. I mean, there's nothing sort of, you know, odd about that. Well, I've been trying to think of, and this may be a poor analogy, but Rule 58, the final order requirement. So the district court has ruled, it's issued a full opinion, it's granted the motion for summary judgment, let's say. But then Rule 58 says, no, you've got to issue a separate order. As I understand Rule 58, it's really an administrative, it's more than an administrative convenience. To the extent it alerts everyone when the time for appeal starts to run. And it avoids a lot of problems and questions that came up before the rule, presumably. Well, I don't know much about this final order that the commission has identified, but it seems to be somewhat like that. Do we have any background on this order, other than what has been provided to us in the brief? I mean, what's in the record is simply the commission's decision, to the extent the commission discusses it. And what the commission has made plain is that it hears any time there is sort of a request for review, it grants it, and it can undertake sui sponte review. And so at the outset of this case, before any appeal was taken, it remanded for further fact-finding. And the commission, my understanding is, what there is is there's a screening process, and it's the screening process that enables the commission to determine when it wants to engage in plenary review. Obviously, it doesn't engage in plenary review in every case, but it's making a decision about what to do. And the point is, as far as formalism is concerned, the final decision has to be the decision of the commission, which is something that in a different context the court observed in the What's the big deal? Why doesn't the commission just say, yes, these are our appointees? I mean, I think, first, that the commission, we don't think the commission is required to, but Johanna referred to the fact that there are other constitutional issues that follow from the appointment, whether from the officer question, and indeed in the timber vest litigation that's already being briefed in the circuit, there is exclusively a separation of powers removal issue being raised so that to the extent that some district court judges have sort of seemed to have taken the view that, you know, why don't you just bring all this mess to an end by just appointing the going to happen, you know, these challenges are not going away. But I guess I'm asking that. So in addition to the removal question, are there other things that you've identified that we should be aware of that hinge on the status of an ALJ as an employee or as an inferior officer? I think it's primarily, you know, the sort of general category of removal separation of powers, you know, issues that are, as I say, are pending in the timber vest case, and they've been asserted in other cases as well. So while it looks sort of on the surface as though, you know, okay, you know, SEC, you don't have to, but why don't you just do it, you know, and put us out of our misery on this? That isn't going to work. So I just think that's an important thing. The implications sort of potentially sort of, you know, not saying that if they were held to be officers that we would have a constitutional removal problem, but there will certainly be, there is certainly the argument that there is one. So that the, you know, the implications, I think, have sort of like all of, you know, the bar that's sort of bringing these various challenges. Mr. Perry makes a point that I had also noticed in preparing for today. It's a little odd that the, whether a decision is subject to someone else's review and approval before it's authoritative is a factor at the line between inferior and principal officers, and Landry, and I think Tucker, and our cases say it's also a factor at the line between employee and inferior officer. Can you help me out if there's something anomalous about that, or is that just totally comprehensive? I mean, it says that the significant authority point is not the line between a principal officer and an inferior officer. It's the line between a officer and a non-officer. And as this court observed in Landry, the data points for determining who is an officer, for that matter, who's a principal officer are few and far between. I mean, I guess sort of want to make sort of two points. One, I think that the attempts to distinguish Landry, sort of while they're heroic, are not, I think, valid ones. Well, what about the APA? Excuse me, Your Honor? The APA makes this distinction, too. Well, the distinction, I mean, again, the, what, going back to if the, in both cases, whether you have a recommended decision or if you have an initial decision, the agency retains the full power to do everything, including factual determinations. So the part that, you know, and the part of the APA, Mr. Perry was reading from says, well, it will become final if nobody appeals. I mean, the, so what the SEC has done is to say, like, I'm not, like, I'm not sort of giving up my right to review, the claim to review sort of so that by the lapse of time, your decisions, like, become final. That's not the way it works. And there is no, as far as I can see, there is no practical distinction between the actual schemes as operated by the FDIC in Landry and by the SEC in this case. And in terms of looking to the regulations, in Landry, Judge Williams looked to the FDIC regulations to determine what was going on. If you look at the FDIC statute, it doesn't talk about, you know, the general provision doesn't talk about ALJs at all. And what the court did was to look to the way that the FDIC was actually implementing its statute. And while there's a lot of formalism that goes into an appointments clause challenge, we think that this works at both the formal level, because you have a final decision of the SEC, not of an ALJ. And it certainly works in terms of what actually happens. And the, I think that not only is this case not meaningful, not distinguishable from Landry, but we also think Landry was correctly decided. That it's not just a question of, well, we sort of got lucky with one decision and we're trying to hang on to it. I think what Landry recognizes is that ALJs are not the equivalent of Article I judges, that there's something fundamentally different about the whole administrative process in which you have an agency that, an agency head that can determine when to bring a lawsuit, can determine when to, can rather determine when to initiate an investigation, can determine when to initiate an administrative proceeding. And then at the other end, exercises full and plenary authority about the outcome and can reject everything that the ALJ does. And Mr. Perry describes that as owning the ALJ. Well, I mean, so it's good you can't have it both ways. The final, what I think there is an implicit recognition that Congress wanted there to be a independent hearing that takes place, but the ultimate authority and the power to reject everything that happens in that hearing is vested in the politically accountable agency head. And then at that point, of course, it is subject to judicial review. And that's when the whole judicial review starts. We're not looking at, we're not talking about the ALJs being judicial officers. And all this, I do want to emphasize we're not in any way suggesting that ALJs aren't crucial. The ALJs are, they perform an incredibly important function, but that doesn't mean that they are constitute, that they have to be constitutionally appointed in accordance with the appointments clause. Do you have numbers that use Mr. Perry's numbers, correct? That there are some 1,500 social security ALJs. And I thought he said some, somewhere over 250 other ALJs. I think those numbers are roughly, I mean, that sounded right to me. I'd have to double check. And do you know how, how many other agencies have ALJs that are in parting material with those of the commission? I'm sorry. When they're not appointed by the agency head. I don't think that most of them are appointed by agency heads. I would have to verify that though. I'm not sure, but it's not my understanding that they are necessarily appointed by agency heads. And it's sort of also, there's certainly kind of the statute by the way, sort of refers to like being appointed by the agency. And there is also a sort of kind of discrepancy between agency and department. And you could be the head of an agency and not be the head of a department. So there's an oddity there. Yeah. Is the department's position then that the statutory language about the initial decision being final is not to be taken at face value? What I'm trying to understand is I hear all this chatter about there are all kinds of problems. The numbers are great. And it may cause, you know, a reconsideration of a lot of different issues. But the only issue before us at this moment, counsel says in his brief, I think, you know, it's a narrow issue. I realize it's not as narrow as he suggests, but I just need to be clear that when we're looking at these Supreme Court cases, telling us what we're supposed to look at. I don't think there's any Supreme Court case that suggests that ALJs are inferior officers. I mean, Free Enterprise made quite clear, obviously didn't decide that they weren't, but made quite clear that the court has not suggested that they are. And the cases involving Article I judges, we think Article I court judges are sort of in a very different sort of position. I mean, these guys, you know, like issue, like exercise the full power, you know, of courts. I mean, if you look at the people who were involved in Edmund, I mean, that intermediate, those intermediate court judges could form sort of sentences, criminal sentences of 25 years and their judgments could become final unless there was discretionary view in law enforces on court of appeals. But that's entirely discretionary. And if they, so their decision could become final. And if it became final, it was their decision. It didn't become the decision of somebody else.  when the appointment clause was considered, it was talking about the key actors in the executive branch as distinct from the functions of persons in the executive branch. I'm just trying to understand where you're drawing the line because every line you draw, I can come back with a comment and say, you know, either a statute or the functions of the people all in line with what the Supreme Court has been saying. Well, I think when you have a employee, when you have an employee who issues a decision that becomes the decision of somebody else and it has to do that. I mean, that's the FDIC. It's a recommended decision. Well, you're in a situation where it is the initial to become the commission's decision for the passage of time. Well, no, it isn't the passage. I mean, the FCC makes very clear that that is not what happens and what the FDIC was going to do. I mean, the FDIC statute makes clear that the ALJ can recommend a summary disposition. You know, the FDIC sort of can just like sort of go, yes, summary disposition. So you're drawing no distinction as to recommended and initial decisions. I'm saying that in the context of what is said in the two statutes between about the FDIC statute and the ALJ statute, the fact that there is a fact that it says we'll become the action of the commission if the FCC declines sort of to like exercise review doesn't make it constitutionally different. So that's the number one hope you're saying, to cut off the appointment clause concern? I mean, we just think that the... I'm just trying to understand the sort of analysis here. That's why I'm pressing you. No, I understand that. And I'm sort of trying to... I don't... It's not easy. But I think that the way that the two statutes in the FDIC case and the FCC's case don't tell you that you're looking in totally different directions. And what you need in both cases is a determination of how the agency acts. So what Mr. Perry says is, well, what happened was that the FCC calls them initial decisions. And having chosen to call them initial decisions, that sort of ends the game. And what we say is, no, you have to look, what did the FCC actually mean? I mean, the terms like initial decision and recommended decision do have significance. But if you look at the attorney general manual Mr. Perry was signing, it goes, in making its decision, whether following an initial or recommended decision, the agency is in no way bound by the decision of its subordinate officer. It retains complete freedom of decision as though it occurred the evidence itself. And, yeah, there can be sort of... I'm not saying that these things never have distinctions, but they don't have meaningful discussions here. I mean, you're right before this panel. That's his position. I think his position is more ambitious, though, that he would seek to have Landry overruled and say that in either case, there's a significant governmental authority and that Landry was wrong. You know, that is definitely the position. And our position, obviously, is that not only does this case fall within Landry, but that Landry was right. Because TRITAG, which dealt with an Article I court and a judge in an Article I court, and a judge who was conceded by the United States to be an officer for all sorts of purposes, then that case doesn't tell you that administrative law judges who operate within a very different kind of system, who are not, who don't have the powers of judges, who are exercising delegated authority only, where that authority can be withdrawn at any time, and whose decisions, what final decisions are those of the agency, that that is not something that Landry, rather that TRITAG, does not tell you that those persons are constitutionally inferior officers. Do you know the answer to the question of whether there's been an instance in which an ALJ decision, for whatever reason, the commission never issued an order confirming it or adopting it, however you want to phrase that, but yet the commission sought to enforce that order? I'm not aware of any such thing. The commission's decision in this case makes pretty clear what it thinks is supposed to happen, which is absolutely not what Your Honor was describing. I can't say with certainty that there's never been such a case, but I'm certainly not aware of one. Maybe we can ask counsel for the SEC. Thank you. Thank you very much, Your Honor. Counsel. I wasn't entirely sure I was going to get a chance to come up here. May it please the Court. I guess I should say for the record, I don't know why not. Okay. Well. We're not barring counsel from making their arguments to the Court. Well, sure. I feel a little bit like the undercard, though. No, you're the main event. Okay. All right. Well, then. Moving along. Sure. Your Honor. Do you have an answer to Judge Wilkham's question? The one about whether there has ever been an order that has been issued that there's no finality order issued and goes into effect without one? That question? Yes. I'm not trying to misstate that. Is that the actual question? The question is, without what you're calling a finality order, has the condition sought to enforce an order of the name of the so-called initial order? Okay. Not in the initial decision realm, as far as I'm aware of. This is dealt with a little bit in the brief, where there was a practice of some ALJs to issue default judgments. Commission in Alchemy Ventures undertook that and rejected that practice. So there may be or may have been one or two instances in which a default judgment was then enforced, but that is no longer happening, and that was corrected in the Alchemy Ventures decision. The commission did not vacate all of those prior default judgments, right? In the Alchemy Ventures, I don't believe it did, no. So doesn't that tell us something? I mean, why would the commission vacate those or seek to confirm those if it thought that it had to somehow mean otherwise? What force or effect did those default judgments have? Well, I think, I mean, I can't speak to why the commission didn't do what it did, but in the Alchemy Ventures decision, which was the one before it, it rejected the practice, which was not widespread from my understanding. And as I said, I don't know how many of them were issued. It was not a large number, and I don't know, I mean, I'm assuming that the question could have been raised in the district court action if there was an attempt to enforce. But these were, as I said, default judgments, so. And as I said, the practice has been changed. Let me just ask another factual question, and I just want to make sure I understand the practice. Is there a difference in the, I guess, the procedure for approving an enforcement action going forward when the enforcement action is brought before the DOJ versus when it's brought before a U.S. district court judge? Either action has to be authorized by the commission itself. So there has to be a commission vote in either case? Yes. Go ahead. So is there any difference in the procedure? No, there is no difference in procedure. And in this case, in fact, despite what's been argued today, this is exactly the type of case that could have been brought before Dodd-Frank as well as after he's a registered investment advisor. And we've had authority to bring administrative proceedings against such people since, I believe, geez, probably the Remedies Act. I mean, it's been a very long time. Or at least we could bring the remedies against the Remedies Act. So this is not a creature of the Dodd-Frank expansion of the commission's to bring APs against unregistered individuals. So how do you answer the statutory argument about 78E1C? I thought Mr. Stern did a fantastic job on that question. I agree entirely with him. I think the statute has been implemented by the SEC. I would note also that the Exchange Act preceded the APA, and so the notion that 78E1 implements the APA provisions or distinctions between – I don't think it doesn't say anything about initial versus recommended, but the notion that it was having this in mind I don't think bears any weight. And do you think that this is a circumstantial – I mean, you're arguing that we should, I guess, in that sense, you know, constitutional avoidance to the extent that there's an interpretation of the statute that would avoid the constitutional authority to adopt that interpretation, right? If that were – that is certainly something that the court could do and is well within its authority to do. I feel like I'm speaking out of my turn to tell the court how to handle if it perceives a problem. I don't think that a different interpretation would be necessary of the statute because, as Mr. Stern pointed out, I don't think it bears the significance that counsel gives it. But that is an option for the court, I believe. I guess I'm trying to – we haven't really talked much this morning about that issue or whether there's any type of Chevron-type difference in the agency with respect to how to interpret the statute, how the regulations fit with the statute. Your brother, counsel, has said emphatically that, you know, the regulations obviously can't trump the statute and that we really shouldn't look at the regulations and how things work in practice so much as just what Congress has authorized by statute. And it seems that we may need to think about some of these other, you know, statutory constructions and administrative law principles here in determining how to construe this provision. Well, I would say, again, I repeat the argument that to the extent that this court handled this issue in Landrieu, it looked to the regulations from the FDIC and they are substantially identical to the FCC's dealing with initial decisions. And so, as Your Honor pointed out, it seems a bit of a semantic game to note that just because one agency calls it initial and one calls it recommended, yet they treat them the same when they go through the process, meaning that all of the authority is left with the agency itself. You know, I think that interpretation is entitled to a measure of deference. All right. All right, let me switch everybody around. I'm sorry about this. Okay. All right. So now, Mr. Perry, do you want to speak on merits for a moment and then we'll call you back. Okay. Thank you, Your Honor. May I make three quick points of rebuttal on the appointments clause, Your Honor, or have you heard enough? Fine. Thank you, Your Honor. Judge Wilkins, I encourage you to read the outcome of the adventure's opinion. You asked about order ALJ orders without finality decisions. And here's what the commission said. I'm quoting just after footnote 34. Although we have concluded that law judges should issue initial decisions going forward, that conclusion does not disturb existing default orders nor limit the division's ability to seek judicial enforcement of those orders. So the commission itself has ruled that the ALJ may issue default orders and cease and desist orders that are enforceable in federal court with no further action from the commission. It is so-called disapproved of the practice, but nothing in the statute or regulations prohibits it. So that's – and read the decision. It talks about all these provisions we're talking about in a way very different than my friends here are telling this court today. And that's a commission decision. I'm just curious as to why that was only in a footnote of your ruling. Your Honor, footnotes, as in Supreme Court cases, footnotes sometimes have the most important bits. Second, Mr. Stern suggested that ALJs are not officers in general. I would point the court to pages 881 and 882 of Freytag, which says these are the categories of a judge being an officer. The office is established by law. The means of appointment are specified by statute. They perform more than ministerial tasks. They take testimony, conduct trials, rule on the invisibility of evidence, and have the power to enforce compliance with discovery orders. Period. End of paragraph, end of discussion. Those are the powers that make a judge an officer. And the ALJs of the SEC exercise each and every one of those powers, Your Honor. Except the authority to enforce discovery. That's not correct, Your Honor. They don't have contempt sanctions, contempt power, but they can bar an attorney from practicing in front of the agency, exclude a witness from the proceedings, take evidentiary sanctions. So they do have the power to enforce discovery orders. It's just not the contempt power. And there's nothing magic about the contempt power, Judge Pillard. The clerks in Hennon and the commissioners in Allred explicitly did not have the contempt power that was reserved for judges, but they were held to be officers. So contempt cannot be the magic wand. Actual implementation and semantic gains, my friends have said. I'll give you the actual implementation. In the FDIC regime, 0% of ALJ decisions were the final decision of the agency. In the SEC regime, 90% of ALJ decisions are the final decision of the agency. You will note that neither of my friends challenged our statistics, which we found from the SEC's own website. That's actual implementation. That's not a semantic difference. That's the difference between an initial decision in the APA and a recommended decision in the APA. Finally, on the appointments clause, as to removal, this court should not respectfully distort the Constitution of the United States, which requires these officers to be called what they are, officers, and appointed pursuant to the clause because of some downstream effect that's not present in this case and may never be raised. The only question here is, are they officers? Freytag says yes. Edmund says yes. And what we've heard here today, respectfully, says nothing otherwise. All right. On the merits. My client, Mr. Mechia, is subject to a lifetime bar from the industry for presenting a 122-page slideshow demonstration to prospective investors that presented a retirement strategy that the commission has never challenged. In fact, in footnote 5 of its opinion, to return to the footnotes just broken, it expressly agrees that there's no challenge to the strategy itself. There's no challenge to the presentation of the actual strategy, which is the bulk of the presentation. The only challenge was to the two so-called back-test scenarios presented for the 1966 and 77, and the commission has really distilled this down to two points in this court. First is the use of assumed rates of inflation, 3%, and rates of return on REIT investments, R-E-I-T investments, of 7%. There's no dispute that these assumptions were expressly disclosed. That's J82434. There's no dispute that these assumptions were reasonable. That's J8309, note 37. What the commission said is that the fact that they were disclosed and reasonable didn't matter. I'm going to quote the language. Irrelevant because, quote, back-tests use historical and not assumed data. That's J8309. Well, as the dissenting commissioners pointed out, the only dissent in 2015 from a commission decision, the commission just made that up. There's no definition of back-test. There's no prohibition against using assumptions, and that's just wrong. Yet it was the sole basis for the liability determination in this case. The commission then comes back in its opinion, and we made this challenge in the petition for review, and says this, this is page 325, quote, our finding of liability does not hinge on Lucia's use of the word back-test. Lucia made numerous other statements suggesting that the slides reflected historical results, end quote. Now, there's no citation for that proposition because it's false. There is no such representation. In fact, these slides said that these were hypothetical, assumed, or not actual results and rates of return 87 times. So for the commission to say that it didn't turn on back-test is an exercise in circularity. The commission then took that. I think what they're saying, just to sort of press you on that, is even the word back-test had never been used. When someone who's advertising his approach says this is a great approach, if you have been using it in the 73 market or the difficult conditions of the 66 market, you would have succeeded, and let me show you how, that there's an assumption there that everything that's material about those markets would be reflected in the test. Otherwise, it doesn't actually prove the point that the man has said he's proven. So it's not so much about do we define back-test or not. We're using historical examples. He didn't say imagine a situation with the kinds of stock market numbers that we had in 73 or 66, and then these other bunch of assumptions. Let's just take that as our hypothetical and look at how well we do. He refers to that because it's powerful for people who have lived through that period of time. Judge Pillard, here's where context matters. The main part of the presentation, which is at JA 2380 to JA 2434, which is the description of the four scenarios, the four hypothetical couples, which goes along and uses the same set of assumptions for each of them on a hypothetical 12-year period. It winds up at JA 2438, I thought I had misspoke, with the overview of all the 50 or so pages that had come before and the summary of what happened. Then what Mr. Lucia did, and this is very clear from the webinar, which is transcribed and is in the UN appendix at page 2577. He then says, okay, those are four hypotheticals. What would have happened in the stock market scenarios of 66 and 73? And he keeps the other assumptions the same. For example, 3% assumed inflation had been used for all the four hypotheticals. He carries that over because he's trying to make an apples-to-apples comparison, except he puts in the actual stock market returns for the 66 period and the 73 period. That's what's changed. And it says that right on the slide. I mean, this, again, is not, as mentioned, 2434. The following examples are based on actual market returns for bonds and stocks. REIT returns are based on a 7% return, and inflation is based on 3%. So the assumptions are disclosed. So all he's doing in these two examples, Judge Pillard, is taking those four hypotheticals that the Commission had never challenged and using stock market returns for those periods plugged in with the other numbers. He's never saying this is a full historical analysis. The Commission has to take that word backtest to bring that in. And that's, in fact, the basis of the Scienter finding here. They have accused, charged, convicted, and punished this man for intentional securities fraud, intentionally misleading investors. And here's the Scienter analysis. This is page 325. Mr. Lucia, quote, knew or must have known that using hypothetical data in the backtest would not reflect historical results. We could all agree with that, Your Honor. But that's not Scienter. That's not deliberate or reckless action designed to mislead investors because it said right in the presentation, I'm using pretend results. In fact, he said in the webinar, let's pretend inflation is 3%. We know it was more than that, but we're going to pretend it's 3%. And then the Commission convicts him of intentional fraud for using a 3% rate. That's just not the way the securities laws work. He said let's pretend with respect to one of his other three hypotheticals. He didn't say that with respect to these historical ones, right? Your Honor, the 3% inflation is used for all of them. I know. I know. But when he's talking about whether it's historically accurate or not, he doesn't have a disclaimer there. Historically accurate, he does, Your Honor. 2434 said the rate is using 3%. The ALJ made a finding at JA122 that no reasonable investor would have thought inflation was actually 3%, constant every year. That's a finding in the record that the Commission just ignored. So that's where it is. But what if unsophisticated investors think precisely because it's not constant, okay, they're averaging it out for what that period is, when in fact it's radically different from what it was. So what is the point? I guess if you step back one more step, what is the point of somebody who's advertising his investment strategy using historical data in part? If he's not actually trying to communicate to people, if the same thing that happened then were to happen to you, you know, this is the scariest part of the market in these people's lives. If that were to happen again and you used my strategy, this is how you would come out. And there are actual numbers there. And if these are so out of line, how is that not misleading? So, first, the strategy is not any particular investment. It's a bucketizing by order of risk and withdrawal according to risk. So then we have three buckets. You take down the least riskiest, the middle riskiest, and the most riskiest. And re-bucketize. Well, it's not re-bucketizing again, but that's the basic strategy is that. Not challenging the strategy. And what he's saying in the historical test is, how do those stand up to the stock market changes of those periods? And while we keep everything else the same, because he's trying to present an analysis that goes across. Add to the re-bucketizing point. It is on one slide, JA2428, at the bottom. At the end of his hypotheticals, which ran for 12-year cycles, it says, and re-bucketized for 12 years. He never again mentioned in that context. The webinar confirms. But these hypotheticals ran for people's entire retirement. They went through. Yes, Your Honor. And so what Mr. Lucci explains in the webinar, this is at page 2556-57. He also explains this more at trial, at JA1611, 1612. But the webinar, I think, is more telling, is that when you get to the end of the third bucket, or at the end of the third bucket, re-bucketizing is a more sophisticated approach that you would discuss with your financial advisor. And what he testified to at trial is, we're now 12 years into it. We don't know. We're going to have to then look in current economic environments and see what's going on. Maybe it's how to re-bucketize, but whether to re-bucketize. I mean, he's saying again and again, I would never fail to diversify. I would never have everything in stocks. I would never spend for my current needs out of the stock market. I would never do that. That's much more dominant as a message than when you're going to re-bucketize and figure out how much to put in which of those three buckets, talk to your advisor. Judge Pillar, he said that once, not again and again. He said that once, not in the presentation, not in the webinar. He said that in an e-mail newsletter to existing clients who already had plans in place. Which is the that that you're referring to? I would never put 100% in stocks. That did not happen in these presentations. It sounds like it from the brief and from the commission's opinion. That was a separate communication to a separate set of actual clients commenting on market events. That was not part of the presentation that's being charged. And it was not part of the strategy. Because what Mr. Leach had testified to, and this is not contradicted, is that when you're initially setting up the strategy at the beginning of retirement, you would never put 100% in stocks. Because you need the least risky to draw down income for the first several years. But then later, after 12 years or whatever, you would have to re-look at it, see what the current economic environments are. And that he was not ever making any comment about that. Certainly, you could disagree with the investment advice. But is it intentional fraud? Is he deliberately, recklessly misleading investors by not re-bucketizing when nothing in here says he would re-bucketize? And certainly it doesn't. It's clear what's going on. It's not certainly a scienter-based fraud. Can you imagine bringing up something like this in district court and saying this presentation, you should go to jail for this? That's not going to happen, Your Honor. And finally, the lifetime bar here is punitive. This is imposing on, you know, what is at most a negligent presentation. That is a not quite, you know, dot every I across every T kind of thing. He made the assumptions. Should he have said assumption 89 times instead of 87 times? I guess that's the commission's argument. No, I think it's, I mean, you know, it's much more you can say, Oh, these are all assumptions, and these are not real people. I mean, that's the most salient way in which there are assumptions. But the entire presentation was hypothetical, Your Honor. Exactly. That's the other way, though. It is not, Your Honor, because there was no representation that this was a real-world scenario. In fact, there's 40-some statements that this is not a real-world scenario. There's nothing wrong with using hypothetical scenarios to show how different approaches will apply to each other. And what about the third claim that even given the universe, as Mr. Lucia would have it, that the results of the 1973 example, even with Mr. Lucia's assumptions, could not be replicated? Well, Your Honor, again, that's the books and records violation that was first not charged and later dropped. So, you know, they're trying to make that into a fraud claim. I mean, it's part of this appeal, is it not? Your Honor, it is an appeal, is they cannot hold him liable for something that wasn't in the order of instituting proceedings. I think that's our first argument, is that they have violated due process and administrative procedure by bringing that up. Second. And we definitely will ask them about that. But from our perspective. Under the commission's view, the error was in the, you know, understated results. When they redid the numbers, they came up with a higher number. And third, it doesn't matter for these people. They came out with, or I think it was your expert came out a million short. Yes, and their expert came out higher. But that's not in the record, is it? It is in the record, Your Honor. And the commission, in its opinion, says it doesn't matter if it's higher or lower, it was just wrong. Well, Your Honor, it does matter if it's higher or lower. When you're talking about imposing a lifetime bar on an individual, it matters which way the error ran and how the error was made. This was, again, a failure to keep records. We acknowledge that and we acknowledge it at the time. But the books and records violation isn't even the case anymore. And certainly this 1973 nonsense wasn't even charged in the order instituting proceedings. All right. Why don't we hear from counsel for the commission. May it please the Court. Thank you, Your Honor. I had a quick comment regarding the Alchemy Ventures matter, and then I would get to any questions the panel may have on the merits. As this Court recognized in Tucker, even an employee can issue final decisions that are not necessarily, that would not necessarily make them an officer, and this is what we argued in our brief in response to their Alchemy Ventures footnote. Understand that Alchemy dealt with only default orders where no litigants stood up to defend, and the commission has said that even in those cases initial decisions are subject to commission review, or that initial decisions subject to commission review are not required. So regardless, the default orders are limited to the same sense as Tucker. So I just wanted to remind the Court about this precedent in Tucker. Regarding the… Default orders that are enforceable by a U.S. District Court judge? Again, this… Wouldn't those default orders be enforceable by a U.S. District Court judge? If the judgment were enforceable in court, it would have to be subject to the court's discretion and jurisdiction in order to determine whether or not there's a basis for it, and the person has the opportunity, as in any other default scenario, to come forth with their explanations for why default was entered, or were they allowed default to be entered. Okay, well, that goes to, like, the merits of whether the order was, you know, default could be set aside, but assuming there's no defense law on that, you're saying that an employee of the SEC can't issue an order that is enforceable by a federal U.S. District Court judge? I'm saying that, under the rationale under Tucker, that as Alchemy outlined, when you're talking about a default judgment, you could issue final decisions that would not necessarily make them an officer. And that's, you know, whether or not, I mean, the practice is no longer in effect. There's decisions, and there's decisions that are enforceable by an Article III judge. So you're saying that a decision that's enforceable by an Article III judge could be rendered by someone who is an employee as opposed to an officer? I'm saying that, consistent with Tucker, that doesn't make them an officer. And if the Court wants to probe this further, I feel like I'm getting far afield from my area of expertise, and I'd invite Mr. Stern back up here. Or we could have additional briefing on it if you want. Are we asking about the merits? Yeah. So I wanted to ask you about the question about whether the 93 example was not charged, and whether that's consistent with due process, even have that as part of the mix. Okay. Well, you mean in terms of the three back tests? Yeah. The fact that Ms. Lucia had no basis for it, and pulled the number out of thin air? That is absolutely encompassed by our allegations, because in the OIP we challenged him with issuing the back test with no reasonable basis. And so, therefore, he showed up at the hearing, and we learned during the discovery process that he had no documentation for it. And so he testified regarding this. So there's no notice concern, because the issue was fleshed out. Both he was put on notice in the OIP, and it was fleshed out during the hearing itself. And so it's clear in the evidence in the record that he couldn't support it. And they don't challenge the Commission's finding that that was a reckless act. What about their contention that it comes out actually to the investor's advantage, that they understated the benefits of their strategy in that historical context? Yeah. I mean, I think this is just another instance in which Mr. Lucia wasn't doing what he was saying. I mean, they're complaining two different findings here, two different misleading aspects of the presentation. One is that if you actually run a historical analysis using historical data, as the expert testimony reveals and is pretty clear on, you run out of money in 1986. So his claim that you will have $1.4 million, even though he can't support it, in 1994 is just false for that reason alone. But then when you get to his numbers and he comes to the hearing and says, well, wait, I ran a different set of assumptions for this, his own experts still couldn't come up with the number. And so if you run that out but you have to use, again, assumptions that don't apply in the real world, well, then, according to a spreadsheet he gave to the staff, and that's what they're referring to in that footnote, he comes out with a different number. But those numbers aren't clearly ones that are used in order to run anything because they don't come up with the number he came up with. So it's a very confusing area of the record. And I think all the commission was saying was that he's pulling the number out of thin air and they don't contest that that's reckless. And I wanted to just focus the court again on the two questions that he asked investors, I'm sorry, they're not investors, they're potential clients, prospective clients, people who he's trying to pitch his retirement strategy to. And those questions were, what would have happened if he retired in 1966? And could the buckets of money approach survive the bear market of 73, 74? Those are historical questions which require historical analysis in order to determine and to give an accurate answer. And when you do use the data that is historical, you end up with a result that is far different than the one he was telling the potential clients he was trying to lure to invest with him. So because these people are unsophisticated, the fact that he puts on a slide, here's my assumption, 3% inflation, 7% yield from REITs, doesn't matter. It's not just the lack of sophistication, Your Honor. What it is is that he has a fiduciary duty to a potential client as well as a current client. And that duty means that somebody listening in that is insured that he's going to speak honestly, he's going to recommend courses of actions that have a reasonable basis to do. And by intentionally rigging these numbers, the 3% inflation rate had a dramatic effect on the results because not only is it an understated rate of what actually happened or occurred during this period, but as he would know, as you can see that he did know, the high inflation rates will drive up T-bills. Well, he used actual T-bill rates in factoring in his numbers. Well, when you do that, and the expert testimony is clear on this, when you do that, he didn't have the benefit of the high T-bill rates, but he had none of the downside of the high inflation rates. And so that, as I said, had a dramatic impact on the end result. Same thing with failure to republicanize. His strategy was all about avoiding the market volatility that he laid out earlier in the presentation. That was the whole reason why he invented these other couples who were investors, the high-rolling Hendersons, as he called them, who put 100% in the stock market. Although his position is that, or at least in this course, that is talking about three different approaches to the first 12 years. And he does bucket ties for the first 12 years and say, let's spend off the conservative, then the medium, then the more risky. And so he's doing something different just with respect to the 12 years, and then saying, oh, from there on in. Right. Two details. Two answers to that. Not three, but two. And that is that in regards to the 66 back test, I mean, you have 37 years that he's running the numbers, because his result is 2003. So if I can do that quick math, it's 27 minus 12 is 15 years, I think it is, that he has his retirees who are getting older invested 100% in the stock market. And he said, I would never, ever advise somebody to have 100% of their savings in the stock market. It turns out that was a pretty good time to be in the stock market. Yeah. Well, that's another thing. Another aspect of the presentation of his assumptions, one thing that it did was that putting all this money in the stock market, it just happened to be exactly in the stock market. Far outpaced T-bills and even the REIT rates that he was relying on. So, you know, there is absolute evidence of scienter here. This is at least reckless conduct. You know, and I think that the commission's chosen remedy is justified in these circumstances. If one were to disagree with you on any of the three bases, would it be behoop us to send it back to the commission because you look at the conduct overall and it's hard to say whether the same remedy would be awarded? I would love to have a way of answering that question without saying that a remand wouldn't be necessary, but I think that's true. I think if you look at our opinion, the commission's identified three bases for misleading, the way that this presentation was misleading. I firmly believe that substantial evidence supports all of those bases. But if the court were to disagree, I do think that a remand would be necessary to determine whether or not the sanctions suit should remain. Anything further? No. Thank you. Thank you. All right. Are we all settled? Good. We'll take the case under advice.
judges: Rogers, Pillard, Wilkins